IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GEORGE THOMAS & LINDA
THOMAS,

            Plaintiffs,

   v.

U.S. BANK, N.A., a foreign legal entity,

            Defendant.

No. CV 05-1725-MO

OPINION & ORDER

**MOSMAN, J.,**

      In this consumer credit dispute case, plaintiffs George and Linda Thomas allege defendant U.S. Bank violated federal and state law by mishandling a Visa account they had with the bank. Specifically, the Thomases allege the bank violated the Fair Credit Reporting Act ("FCRA") by unreasonably investigating their dispute and by acquiring their credit report for an improper purpose. 15 U.S.C. §§ 1681s-2(b)(1), 1681b(f). They also allege the bank violated Oregon's Unlawful Debt Collection Practices Act ("UDCPA"), Or. Rev. Stat. §§ 646.639-646.641, and Oregon's Unlawful Trade Practices Act ("UTPA"), Or. Rev. Stat. §§ 646.605-646.638. Before the court are the parties' cross motions for summary judgment, as well as U.S. Bank's motion to strike. For the reasons that follow, U.S. Bank's motion for summary judgment

PAGE 1 - OPINION & ORDER

(#47) is GRANTED IN PART AND DENIED IN PART, the Thomases' motion for partial summary judgment (#45) is DENIED, and the motion to strike (#83) is GRANTED.

## BACKGROUND

In 1989, the Thomases filed for Chapter 13 bankruptcy. Judge Perris entered a discharge order in February 1995. One of the discharged debts was a U.S. Bank Visa credit card account with a balance of over $3,000.

In March 2002, the Thomases applied for a mortgage and learned that Experian was reporting the Visa account on Mr. Thomas's credit report. Mr. Thomas disputed the reporting to U.S. Bank and to Experian. Shortly thereafter, the bank sent Mr. Thomas a letter stating it had contacted Experian, Equifax, and TransUnion and requested that a notation be added to the Visa account indicating it was "included in a Chapter 7 bankruptcy." Def.'s Concise Statement of Facts, ¶ 2. The Thomases forwarded this letter to Experian and asked Experian to remove the account from Mr. Thomas's report. The Thomases did not dispute the bank's statement that the account was included in a *Chapter 7* bankruptcy. Later on in 2002, the Thomases took out a mortgage with Washington Mutual Bank.

The next significant event occurred two years later in September 2004. The Thomases were seeking to refinance, and they applied for a loan with ING Direct. The balance of their Washington Mutual Loan was $216,387 and they sought new financing for $275,000 so they could pay off their loan and consolidate other debts. ING denied the Thomases' application citing a low credit score. ING also concluded that the Thomases' debt-to-income ratio only supported a loan for $185,700. After ING's denial, the Thomases got a copy of the "tri-merge"[1] credit report, provided by First American Credco ("Credco") that ING used in processing their application, and they learned Equifax and TransUnion were reporting the Visa account with a notation stating it was discharged in Chapter 7 bankruptcy. The Thomases disputed the Visa

---

[1]This is a report that includes information from all three major credit reporting agencies: Equifax, Experian, and TransUnion.

account to all three credit reporting agencies and Credco.

In response to the Thomases' dispute, Equifax sent U.S. Bank an Automated Customer Dispute Verification ("ACDV") on October 21, 2004.  The ACDV described the dispute as:  "Not his/hers.  Provide complete ID."  The ACDV also included a comment from Mr. Thomas stating he "never filed a Chapter 7 bankruptcy that the US is claiming."  Heitman Decl. in Supp. Mot. Summ. J., Ex. L at 6.  The next day, U.S. Bank verified to Equifax that the Visa account belonged to Mr. Thomas and asked Equifax to change the notation on the account to include "Paid or closed/zero balance."  *Id.*  The bank did not address Mr. Thomas's bankruptcy objection.

On November 3, 2004, Credco sent U.S. Bank an ACDV stating Mr. Thomas "Claims account closed.  Verify Account Status and Date Closed."  Def.'s Concise Statement of Facts, ¶ 9. Again, the bank verified that the account belonged to Mr. Thomas.  It further verified that the account was closed and had been included in a bankruptcy.  On the same day it responded to Credco's ACDV, the bank blocked its automated reporting of the Visa account to the credit reporting agencies.

Mr. Thomas sent a dispute letter directly to U.S. Bank on November 15, 2004 stating in part, "I have never taken a Chapter 7 bankruptcy period!"  *Id.,* ¶ 10.  He failed to mention, however, that he had filed a Chapter 13 bankruptcy.  The bank's credit dispute department interpreted the letter as an assertion that he was never involved in any kind of bankruptcy, and because its records indicated the Thomases did have a bankruptcy, it forwarded the dispute to the bank's bankruptcy department for verification.  Even though the bank admits it had record of the Thomases' Chapter 13 bankruptcy at this time, the bankruptcy department failed to locate these records and therefore it could not verify that the Thomases filed for bankruptcy at all.  As a result, the credit dispute department concluded its records referencing a bankruptcy were in error, and the department manager instructed the credit reporting agencies to remove the bankruptcy comment from their reports and instead indicate the Visa account was a "charge off."  The bank sent Mr. Thomas a letter on November 26, 2004 explaining the results of the investigation and

relaying the changes the credit reporting agencies were instructed to make.

Before Fall 2004, the only action U.S. Bank took with regard to the Visa account was its periodic reporting to the credit reporting agencies. Once the account status was changed from bankruptcy discharge to "charge off," however, the bank determined the unpaid balance was collectible and it began calling Mr. Thomas at home and writing him letters in an attempt to collect the debt. Between mid-December 2004 and mid-May 2005, the bank made nine calls and sent two letters. It also ran Mr. Thomas's credit report. Mr. Thomas spoke to bank personnel twice. In early June 2005, the bank assigned the Visa account to Capital Management Services, Inc. ("CMSI") for collection. CMSI called Mr. Thomas six times, sent him one letter, and ran his credit report. Mr. Thomas never spoke with CMSI. CMSI stopped its collection efforts on June 14, 2005, after receiving a cease and desist letter from Mr. Thomas. No further collection efforts, by CMSI or the bank, were made after this date.

In November 2005, Mr. Thomas applied for and received a $300,000 loan from Hyperion Capital Group. The Thomases filed suit against U.S. Bank in November 2005.

## DISCUSSION

### I.)    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of "pointing out" the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In order to defeat summary judgment, the non-moving party must then set forth "specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (citation omitted).

**II.)     U.S. Bank's Motion for Summary Judgment**

U.S. Bank argues it is entitled to judgment as a matter of law on each of the Thomases' claims.

A.)     Fair Credit Reporting Act Claims

The FCRA imposes liability on those who negligently or willfully violate its requirements.  15 U.S.C. §§ 1681n, 1681o.  As indicated above, the Thomases allege U.S. Bank violated two provisions of this Act.  First, they argue the bank failed to reasonably investigate the dispute notices it received.  15 U.S.C. § 1681s-2(b)(1) ("reasonable investigation provision").  And second, they contend the bank obtained Mr. Thomas's credit report for an impermissible purpose.  15 U.S.C. § 1681b(f) ("impermissible purpose provision").  The bank makes three arguments in support of its motion for summary judgment as to the FCRA claims: (1) it is entitled to judgment as a matter of law on the merits of both claims, (2) even if the Thomases prove it violated the reasonable investigation provision, they are not entitled to recover damages, and (3) it is entitled to judgment as a matter of law to the extent the Thomases' seek punitive damages because even if it violated the Act, it did not do so willfully.

1.     Reasonable Investigation–Merits

The FCRA places a duty on those who "furnish" credit information to ensure that the information it provides is accurate.  15 U.S.C. § 1681s-2(a).  The parties concede U.S. Bank is a "furnisher" under the FCRA.  Upon notice of a dispute from a credit reporting agency, the furnisher must "conduct an investigation with respect to the disputed information" and report the results of its investigation.  15 U.S.C. § 1681s-2(b)(1).[2]  Notice of a dispute received directly

---

[2]Section 1681s-2(b)(1) provides in total:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer

from the consumer does not trigger this duty. *Id.* The Ninth Circuit has not established a standard for what constitutes an acceptable "investigation" under § 1681s-2(b). *Cope v. MBNA Am. Bank, NA*, 2006 WL 655742, *4 (D. Or. Mar. 8, 2006) (unpublished). However, other courts addressing this issue have held that the investigation must be "reasonable." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005); *Cope*, 2006 WL 655742, *4 (listing cases). The FCRA provides a private right of action to remedy violations of the reasonable investigation provision, §1681s-2(b), but not for violations of § 1681s-2(a), the accuracy in reporting provision. 15 U.S.C. 1681s-2(c); *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002). Thus, to prevail, the Thomases' claim must be based on U.S. Bank's response to a dispute, not just allegations that it reported false information.

The bank received ACDVs from Equifax and Credco in late October 2004 and early November 2004, respectively.[3] In response, the bank verified the Visa account belonged to

---

> reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>> (i) modify that item of information;
>> (ii) delete that item of information; or
>> (iii) permanently block the reporting of that item of information.

Subsection (E) was not enacted until after the relevant events of this case. Therefore, even though the Thomases cite it in their briefing, it does not apply here.

[3]Mr. Thomas sent a dispute letter directly to the bank in November 2004; however, because the bank's duty to investigate under § 1681s-2(b) is only triggered when it receives notice of a dispute *from a credit reporting agency*, the bank's response to this letter is not

Mr. Thomas and that it was closed or had a zero balance. However, as described above, Equifax's ACDV specifically referenced Mr. Thomas's dispute with the Chapter 7 bankruptcy notation, and the bank failed to address this issue.

The Thomases argue the bank's actions violate § 1681s-2(b) for two reasons. First, they contend the bank acted unreasonably in failing to discover, from its own records, that the account was discharged in a Chapter 13 bankruptcy and not a Chapter 7 bankruptcy. The bank acknowledges its error, but, relying on *Westra*, argues that its actions need not be error free to satisfy § 1681s-2(b). In *Westra*, the consumer disputed an account on his credit report asserting his identity was stolen and the account did not belong to him. 409 F.3d at 826. The credit reporting agency sent a dispute notice to the furnisher but failed to include the consumer's identity theft allegation. *Id.* The furnisher conducted a cursory investigation and verified that the account belonged to the consumer based on a match of his name, address, and birth date. *Id.* Thereafter, the consumer sent an additional dispute letter directly to the furnisher referencing identity theft, and the furnisher stopped reporting the disputed account. *Id.* The consumer sued the furnisher arguing it failed to conduct a reasonable investigation of the first dispute. *Id.* at 827. The Seventh Circuit, however, affirmed the district court's grant of summary judgment in favor of the furnisher finding that the investigation "was reasonable given the scant information [the furnisher] received regarding the nature of [the consumer's] dispute." *Id.* The court further explained that had the credit reporting agency given the furnisher "notice that the nature of the dispute concerned fraud, then perhaps a more thorough investigation would have been warranted." *Id.*

On the other hand, in *Johnson v. MBNA America Bank, NA*, 357 F.3d 426 (4th Cir. 2004), the consumer disputed a credit card account showing up on her credit report arguing it belonged to her husband and she was only an authorized user, not a co-obligor. *Id.* at 428-29. The

---

relevant.

PAGE 7 - OPINION & ORDER

ACDVs sent to the furnisher specifically identified this dispute. *Id.* at 429. The furnisher conducted a cursory review of its Customer Information System ("CIS") and verified the account based on a match of the consumer's name and address. *Id.* at 431. The furnisher's representatives also testified that "in investigating consumer disputes generally, they do not look beyond the information contained in the CIS and never consult underlying documents such as account applications." *Id.* The Fourth Circuit upheld the district court's denial of a motion for judgment as a matter of law after the jury returned a verdict in favor of the consumer finding there was sufficient evidence for the jury to conclude the furnisher's investigation was unreasonable under the circumstances. *Id.* at 432.

For purposes of summary judgment, I find *Johnson* is more analogous to the case at hand than *Westra*. It is true the ACDVs sent to U.S. Bank were fairly generic. Equifax's ACDV identified the dispute as: "NOT HIS/HERS. PROVIDE COMPLETE ID," Heitman Decl., Ex. L at 6, and Credco's notice simply stated, "Customer Claims Account Closed." *Id.*, Ex. M at 2. However, the bankruptcy notation in Equifax's ACDV gave the bank more specific information regarding the nature of Mr. Thomas's dispute than the information provided in *Westra*. Admittedly, Mr. Thomas was not as clear as the consumer in *Johnson* because he failed to explain that the bank erred as to the *type* of bankruptcy indicated and not the *fact* of bankruptcy; but the notation did alert the bank as to the general subject matter of Mr. Thomas's dispute, and the bank could have tailored its investigation accordingly. And in light of the bank's admission that it had record of the Thomases' Chapter 13 bankruptcy at the time of the dispute, Def.'s Concise Statement of Facts at ¶ 11; Pl.'s Mem. in Opp. to Def.'s Mot. Summ. J. at 8 (quoting Roberts Depo., p. 36, ln. 21-23), it seems that had it done so, it would have discovered its error. Instead, however, the bank performed a cursory review, verifying only that the account belonged to Mr. Thomas and saying nothing about the ACDV's bankruptcy comment. Equifax employee Tina Sapere testified in her deposition that under industry standards the bank's silence is treated as a verification of its prior report–that the debt was discharged in a Chapter 7 bankruptcy.

Baxter Decl. in Supp. Pl.'s Opp. to Def.'s Mot. Summ. J. at 13. Thus, viewing the facts in the light most favorable to Mr. Thomas, not only was the bank non-responsive to his specific dispute, it verified the challenged information without even investigating it. This certainly creates an issue of fact as to whether the bank acted reasonably. *Westra*, 409 F.3d at 827; *Cope*, 2006 WL 655742 at *4.

The Thomases also argue the bank acted unreasonably because after its investigations, it continued reporting the Visa account even though it was clearly obsolete. The FCRA provides a seven year period for reporting most negative credit information. 15 U.S.C. § 1681c(a). Addressing the bank's records of the Visa account, U.S. Bank's representative, Sarah Roberts, testified as follows:

> Q:    But the purpose of the document was to show that Mr. Thomas had a bankruptcy discharged in 1989 with a last payment date of 5/1/80-something; is that correct?
> A:    Yes.
> Q:    And this was in U.S. Bank's records at the time of his dispute.
> A:    Yes.
> Q:    And they could have just looked on their computer screen and seen this.
> A:    Yes.
> Q:    And despite this document they continued to verify the account on his credit report. Correct?
> A:    Again, we verified it based on our understanding of his dispute that he didn't file bankruptcy at all.
> Q:    But the fact that the last payment was made in the 1980s, are you indicating have [sic] no bearing on whether it would be on his credit report?
> A:    That does, yes.
> Q:    So if the last payment was made in the 1980s it shouldn't be on his credit report, should it?
> . . . .
> A:    I would think not.

Baxter Decl. in Supp. Pl.'s Opp. to Def.'s Mot. Summ. J. at 9. This evidence also creates a question of fact as to whether the bank acted reasonably. Aside from whether or not Mr. Thomas described his dispute with sufficient specificity, it appears the bank had ready access to information establishing the Visa account was well beyond the proper reporting period, and the bank has not explained why it continued reporting the account in spite of this information. Thus, the bank's motion is denied as relates to the merits of the reasonable investigation claim.

PAGE 9 - OPINION & ORDER

2.	Reasonable Investigation – Damages

The Thomases assert the following damages in relation to their reasonable investigation claim: (1) lost opportunity to refinance with ING; (2) additional fees and costs related to the refinancing they ultimately obtained with Hyperion, including $1,125 in closing fees, a higher interest rate, and $40 in postage and credit report fees; and (3) emotional distress.  U.S. Bank argues the Thomases are not entitled to recovery any of their alleged damages.

The bank's first argument on this point is that the Thomases' claim is untimely.  Section 1681p of the FCRA requires the plaintiff to bring an action to enforce "any liability created under this subchapter" within "two years after the date of discovery by the plaintiff of the violation that is the basis for such liability."  The bank argues that because the Thomases knew it was erroneously reporting the Visa account as involved in a Chapter 7 bankruptcy as far back as March 2002, the statute of limitations for raising this issue expired before the bank even received the ACDVs at issue here.  This is in error.  The Thomases' suit is necessarily based on the bank's investigation of the ACDVs, and not simply on its reporting of false information.  *Nelson*, 282 F.3d at 1059-60.  Thus, the "liability" at issue did not arise, and therefore the two-year time period was not triggered, until the investigations were performed in Fall 2004.

Second, the bank argues the Thomases cannot establish a causal link between its actions and the damages sought.  The bank is correct as to the Thomases' first two categories of damages. The Thomases' failed attempt to refinance with ING occurred in September 2004, before the investigations at issue here occurred.  In fact, it was that credit denial that motivated Mr. Thomas's disputes.  Thus, as a matter of timing, the investigations did not *cause* ING to deny the Thomases' loan application.  *See Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004) ("A CRA cannot be held liable for a denial of credit occurring before it has been put on notice that its report is disputed."); *see also* Immanuel Kant, *Critique of Pure Reason* 178-79 (Paul Guyer & Allen Wood eds. & trans., Cambridge Univ. Press 1998) (1781, 1787) (identifying the concept of sequence as it relates to causation as a necessary truth).

PAGE 10 - OPINION & ORDER

It appears the Thomases are arguing they lost this financing as a result of U.S. Bank's erroneous reporting before September 2004; but, as discussed above, the accuracy of the bank's reports, apart from its investigations, is not properly considered in a § 1681s-2(b) claim.

The Thomases have also failed to establish a causal connection between the bank's investigation actions and their increased refinancing costs.  To the extent they argue they incurred additional expense because they had a lower credit score caused by the bank's actions *before* October 2004, these damages would be precluded for the same reasons as discussed above.  To the extent they argue the bank's unreasonable investigations somehow resulted in a continued negative impact on their credit, it seems this could be a harm related to their § 1681s-2(b) claim; however, the Thomases admit that by the end of  November 2004 the bank blocked all electronic reporting of the Visa account and instructed the credit reporting agencies to stop reporting the account.  Pl.'s Response to Def.'s Concise Statement of Facts at ¶ 11.  Thus, to establish causation, they have to prove their increased refinancing costs in November 2005 somehow flowed specifically from the bank's actions in late October 2004 through November 2004.  Aside from a general inference of harm, the Thomases have not proffered any evidence establishing the bank's actions within this small window resulted in the increased costs they experienced in November 2005 as opposed to other factors.  Thus, the bank's motion is granted as to the Thomases' alleged financial damages as relates to the reasonable investigation claim.

Finally, the bank argues the Thomases' are not entitled to recover emotional harm damages.  In *Myers v. Bennett Law Offices*, 238 F. Supp. 2d 1196 (D. Nev. 2002), the District of Nevada, relying on a Fifth Circuit case, held that "a plaintiff must support a claim of damages based on emotional distress with something more than his or her own conclusory allegations." *Id.* at 1206.  That "something more" can include "medical testimony or testimony by any individuals other than the Plaintiffs tending to corroborate their claims." *Id.*  Here, the Thomases allege the bank's failure to correct its error upon receipt of the ACDVs and its resulting collection efforts caused them significant stress. *See* Pl.'s Resp. to Def.'s Concise Statement of Facts at ¶17.

PAGE 11 - OPINION & ORDER

This allegation is supported by the Thomases' testimony, as well as testimony from their daughter, Brandi St. Clair.  Specifically, Ms. St. Clair stated her mother  "would just get very upset, and she would go into panic attacks.  She wouldn't be able to breathe." *Id.*  Likewise, she testified her father got extremely upset, which caused shingles and other physical pain.  *Id.*  Under the standard articulated in *Myers*, I find the Thomases have presented sufficient evidence to defeat summary judgment as to their alleged emotion distress.

        3.      Improper Purpose – Merits

      The Thomases' second FCRA claim alleges the bank violated the Act by obtaining Mr. Thomas's credit report for an improper purpose.  The FCRA creates liability for parties who acquire consumer credit reports for an improper purpose.  15 U.S.C. § 1681b(f).  Section 1681b(a) outlines the permissible purposes for acquiring a credit report.  Relevant here is § 1681b(a)(3)(A), which states it is permissible to obtain a credit report with the "inten[t] to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account[4] of, the consumer[.]"

      U.S. Bank argues it obtained Mr. Thomas's credit report with the permissible purpose of collecting on the Visa account.  Relying on  *Trikas v. Universal Card Services Corp.*, 351 F. Supp. 2d 37 (E.D.N.Y. 2005), the bank further argues that even though it was mistaken in concluding the debt was collectible, its error did not render its otherwise permissible purpose impermissible.  The *Trikas* Court pointed out "intent" is the key language in § 1681b(a)(3)(A), and a mistake made by the furnisher does not necessarily render its intent impermissible.  *Id.* at 42.  In that case, the bank erroneously left an account open that should have been closed, and because the account was left open, it continued to periodically review the consumer's credit report in the normal course of business.  *Id.* at 39.  The court concluded there as no FCRA

---

[4]The Ninth Circuit has interpreted "collection of an account" as collection of a debt. *Hasbun v. County of L.A.*, 323 F.3d 801, 803 (9th Cir. 2003).

violation because "the intention behind the Bank's periodic requests for Plaintiff's consumer report was merely to review his account, albeit an account that should have been closed." *Id.* at 42.

U.S. Bank argues the reasoning in *Trikas* applies equally here because even though it was wrong in concluding the debt was collectible, its intent was simply to collect the debt. The Thomases, on the other hand, argue the bank did not simply make a mistake, but rather attempted to collect a debt it knew was not collectible, thereby deliberately harassing plaintiffs. In support of their argument, they point to the fact that the bank's own records, identifying 1989 as the date of last activity, establish that the debt was obsolete. Baxter Decl. in Supp. Pl.'s Opp. to Def.'s Mot. Summ J. at 8-10. They also argue U.S. Bank gave CMSI false information when it transferred the debt for collection to hide the fact that the debt was obsolete. The Thomases cite CMSI's Senior Vice President of Compliance and Quality's deposition stating CMSI got the date of last activity appearing on its records–June 3, 2005–from U.S. Bank.[5] The bank responds with a declaration from CMSI's Executive Vice President of Information Technology explaining that

---

[5]The following two exchanges occurred:

> Q:   Okay. Is there any date of last activity that US Bank informs you about an account?
> A:   We were forwarded the last date that a payment was made on the account.
> Q:   What was that?
> A:   June 3, 2005

Pl.'s Mem. in Opp. Def.'s Mot. Summ. J. at 12.

> Q:   Right. Okay. In other words, Mr. - - US Bank represented that a payment had been made in 2005; correct? I think you have testified to that.
> A:   Yes.
> Q:   So from your perspective, you believed US Bank, and accordingly, you would have authorization to pull a credit report; correct?
> A:   Based on that information we have authorization, not from US Bank but within the guidelines that the law permits us.
> Q:   Yeah. Based on the information provided by US Bank.
> A:   Correct.

Baxter Decl. in Supp. Pl.'s Opp. to Def.'s Mot. Summ. J. at 20.

U.S. Bank never forwarded a date of last activity to CMSI, and as a result, CMSI's software used the date the account was transferred to CMSI–June 3, 2005–as the default date of last activity. Florczak Decl. in Supp. Def.'s Reply at 2. Whatever the truth, there is a disputed issue of material fact on this point.[6]  And even though the parties have not cited to and the court has not found any case law on this point, it seems that where a furnisher tries to collect a debt it knows is not collectible, it does not act with the "inten[t] to use the information in connection with . . . collection," as those words are used in § 1681b(a)(3)(A).  Thus, I find the Thomases have made a sufficient showing to defeat summary judgment, and I deny U.S. Bank's motion as relates to the improper purpose claim.

4.    Willfulness – Punitive Damages

The Thomases seek punitive damages as part of their FCRA claims.  A defendant is only liable for punitive damages for willful violations of the Act.  15 U.S.C. § 1681n.  Recently, the Ninth Circuit held that a defendant willfully violates the FCRA where it acts in "'conscious disregard' of the law, which means 'either knowing [its] policy [or action] to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy [or action] contravened those rights.'"  *Reynolds v. Hartford Fin. Servs. Grp., Inc.*, 435 F.3d 1081, 1098 (9th Cir. 2006) (citation omitted).

Regarding the § 1681s-2(b) reasonable investigation claim, U.S. Bank argues that even if it violated the Act, it investigated the ACDVs it received in good faith and its failure to accurately resolve them was due, in part, to Mr. Thomas's lack of specificity.  The Thomases assert that given the bankruptcy information was in the bank's own files, it can be inferred the bank, at a minimum, acted in reckless disregard of their rights by verifying false information.

---

[6]The bank argues in its reply brief that the Thomases admit CMSI acted with a proper purpose in requesting their credit report.  *See* Def.'s Concise Statement of Facts, ¶ 14; Pl.'s Resp. to Def.'s Concise Statement of Facts, ¶ 14.  However, even though the Thomases admitted to the underlying facts, they specifically denied that CMSI "has a permissible purpose for obtaining [their] credit report."  Pl.'s Resp. to Def.'s Concise Statement of Facts, ¶ 14.  Thus, I reject the bank's representation regarding the state of the record on this point.

For the same reason that the bank's motion for summary judgment as to the merits of the reasonable investigation claim is denied, I also deny the bank's motion as to punitive damages as relates to this claim.  As discussed above, there is evidence suggesting the bank verified, through silence, facts it failed to investigate.  Depending on the circumstances, such could be a "conscious disregard for the law" or an act in "reckless disregard" of the Thomases' rights as consumers.  It is true the Thomases do not have a "smoking gun," or any clear evidence proving surreptitiousness, but there is a question as to why the bank repeatedly failed to discover and report significant, readily ascertainable information.  *See* Baxter Decl. in Supp. Pl.'s Opp. to Def.'s Mot. Summ. J. at 6-10.  And as such, the bank is not entitled to judgment as a matter of law on this issue.

Similarly, a question of fact exists as to whether the bank willfully violated the improper purpose provision.  Section 1681n(b) specifically states that "[a]ny person who obtains a consumer report from a consumer reporting agency under false pretenses or *knowingly without a permissible purpose* shall be liable . . . ."  (emphasis added).  Because there is a question of fact regarding whether the bank knew the Visa account was not collectible when it began its collection efforts, there is also necessarily a question of fact regarding whether the bank acted "knowingly without a permissible purpose." *Id.*  Thus, the bank's motion is denied as to the Thomases' claim for punitive damages under the FCRA.

B.)    State-law Claims

The Thomases also allege the bank violated Oregon's UDCPA and UTPA.  U.S. Bank argues it is entitled to summary judgment on these claims based on two preemption theories, as well as the merits of these claims.

1.    FCRA Preemption

The FCRA preempts all state laws regulating a furnisher's duty to provide accurate information.  15 U.S.C. § 1681t(b)(1)(F).  The Thomases concede that to the extent their UDCPA and UTPA claims are based on allegations that the bank reported false and obsolete

information, they are preempted by the FCRA. Pl.'s Surreply in Opp. to Def.'s Mot. Summ. J. at 6. This concession does not completely resolve the UDCPA claim. However, it does resolve the UTPA claim. The UTPA proscribes making "false or misleading representations concerning credit availability or the nature of the transaction or obligation incurred." Or. Rev. Stat. § 646.608(1)(k). In their second amended complaint, the Thomases allege U.S. Bank "willfully made a false or misleading representation of fact" in violation of the UTPA. Thus, as plead, this claim is entirely preempted. 15 U.S.C. § 1681t(b)(1)(F).

### 2. Bankruptcy Preemption

Citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002), U.S. Bank also argues the Thomases' state claims are preempted by the Bankruptcy Code. In *Walls*, the plaintiff received a Chapter 7 bankruptcy discharge and thereafter sued one of her creditors for trying to collect a discharged debt. *Id.* at 504. The plaintiff alleged violations of the bankruptcy court's discharge order, as well as violations of the Fair Debt Collections Practices Act ("FDCPA"), the federal corollary of the UDCPA. *Id.* The court held the FDCPA claim was preempted because the only remedy for violations of a bankruptcy discharge order is civil contempt under 11 U.S.C. § 105 and allowing the FDCPA claim to proceed would permit "through the back door what [plaintiff] cannot accomplish through the front door-a private right of action." *Id.* at 510.

Here, the Thomases are not directly alleging a violation of the bankruptcy discharge order. In their UDCPA claim they allege, among other things, that the bank unlawfully attempted to "enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist." Or. Rev. Stat. § 646.639(2)(k). In their first two complaints, their allegations on this point focused on the bank's attempt to collect a debt previously discharged in bankruptcy. However, apparently recognizing the preemption problem, in their second amended complaint the Thomases excluded all reference to their bankruptcy. Likewise, in response to the bank's motion for summary judgment, the Thomases argue the bank violated the UDCPA by attempting to collect an *obsolete* debt.

PAGE 16 - OPINION & ORDER

The bank argues the Thomases are trying to avoid preemption by putting a new label on the same facts. I disagree. Though the facts at issue are similar, the basis of liability the Thomases are now focusing on has nothing to do with their bankruptcy discharge. They have alleged a completely different legal theory as to why the bank attempted to enforce a remedy it knew it had no right to enforce. This difference is evidenced by the fact that, unlike in *Walls*, resolving the Thomases' obsolescence argument does not "necessarily entail[] bankruptcy-laden determinations." *Walls*, 276 F.3d at 510. Thus, allowing the Thomases to proceed with this claim will not "circumvent the remedial scheme of the [Bankruptcy] Code," *id.*, and bankruptcy preemption does not apply here.

3.    UDCPA Merits

Because the Thomases' UDCPA claim survives the bank's preemption arguments in part, it is necessary to address the bank's motion as relates to the merits of this claim. To recover under the UDCPA, the Thomases must prove the bank "willfully" employed unlawful debt collection practices. Or. Rev. Stat. § 646.641(1). Though the statute does not define "willfulness," the Oregon Supreme Court construes this term in the UTPA, the UDCPA's sister statute, as "no more than proof of ordinary negligence by a defendant in not knowing, when it should have known" its actions violate the Act. *State ex rel Redden v. Discount Fabrics, Inc.*, 615 P.2d 1034, 1039 (Or. 1980). The Thomases allege U.S. Bank willfully employed three unlawful debt collection practices under the UDCPA.

i.    *Subsection (k) – Enforcing a right that does not exist*

The UDCPA proscribes "[a]ttempt[ing] to or threaten[ing] to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist." Or. Rev. Stat. § 646.639(2)(k). The Thomases allege the bank violated this provision by attempting to collect the Visa account even though it knew or had reason to know the debt was not collectible. The bank responds that it is entitled to summary judgment because, under Oregon case law, attempting to collect a non-existent debt is not proscribed. *Porter v. Hill*, 838 P.2d 45 (Or.

PAGE 17 - OPINION & ORDER

1992); *Pro Car Care v. Johnson*, 118 P.3d 815 (Or. Ct. App. 2005). In *Porter*, an attorney sued his former client for failure to pay attorney fees and costs, and the client counterclaimed, arguing the attorney violated § 646.639(2)(k) by attempting to collect a debt that was not owed. 838 P.2d at 47-48. In fact, after consulting his records, the attorney conceded no fees were owed; however, he asserted the term "right" as used in subsection (k) does not include the debt itself. Rather, based on the larger statutory context, "right" refers to the *method* used to collect the debt. *Id.* The Oregon Supreme Court agreed.

The UDCPA defines "debt" as "any obligation or *alleged* obligation." Or. Rev. Stat. § 646.639(1)(e) (emphasis added). The Act also provides, "It shall be an unlawful collection practice for a debt collector, *while collecting or attempting to collect a debt* to do any of the following . . . ." Or. Rev. Stat. § 646.639(2) (emphasis added). Based on this language, the Supreme Court concluded § 646.639(2) only makes grammatical sense "if an underlying debt . . . is assumed to exist" and the specific prohibitions are read to refer to *collection methods,* and not the debt itself. *Porter*, 838 P.2d at 48-49. Further, the court held that while some of the UDCPA's provisions prohibit threatening "legal action, or misleading the debtor into believing that legal authority exists. . . . , no paragraph suggests that *actually* filing a legal action is prohibited. That is because filing a legal action resolves issues surrounding the debt in a proper manner, not duplicitously or coercively." *Id.* at 50.

The Oregon Court of Appeals extended this holding in *Pro Car Care v. Johnson*. There, the consumer took her car in for repairs and stopped payment on her check after she continued having problems once the car was returned. 118 P.3d at 816-17. The mechanic ultimately fixed the additional problems. *Id.* at 817. After the consumer failed to pay the balance owed, he sent a letter threatening litigation if she did not pay and ultimately filed suit against her. *Id.* at 817. Again, the consumer counterclaimed under the UDCPA. Relying on *Porter*, the Court of Appeals held that along with *filing* a civil action, *threatening* to file a civil suit is not a prohibited action where the debtor "ha[s] a right to file that action." *Id.* at 819.

PAGE 18 - OPINION & ORDER

The procedural posture of this case is different from both *Porter* and *Pro Car Care*.  In those cases, the creditor filed suit against the debtor.  Here, U.S. Bank has not sued the Thomases.  Thus, *Porter* does not directly apply.  However, aside from the allegations that are preempted by the FCRA, the only action that the Thomases complain about are the bank's letters threatening suit if they failed to pay the Visa account.[7]  Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 29-30; Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. at 2-4.  Under *Pro Car Care*, this is not an unlawful collection practice in violation of the UDCPA subsection (k).  The Thomases attempt to distinguish *Pro Car Care* on the basis that there the creditor's demand letter threatening litigation was a necessary step before it could file suit against the consumer.  It is true the Court of Appeals addressed this fact, however, it only did so in the context of finding no violation of *subsection (n)*.  *Id.* at 820.  In relation to subsection (k), the court simply held: "The demand letter amounted to a threat to file a civil action.  Plaintiff had a right to file that action; it was a remedy to which it was entitled."  *Id.* at 819.  Thus, I reject the Thomases' argument and grant U.S. Bank summary judgment as to subsection (k).

      ii.      *Subsection (m) – Representing debt may be increased unlawfully*
                    *AND*
              *Subsection (n) – Collecting unlawful interest or fees*

Under § 646.639(2)(m) it is an unlawful debt collection practice to "[r]epresent that an existing debt may be increased by the addition of attorney fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt."  Similarly, subsection (n) makes it unlawful to "[c]ollect or attempt to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law."  The Thomases argue the bank violated these subsections by demanding more than what was owed on the Visa account after the

---

[7]Whether U.S. Bank violated the UDCPA by turning over a debt it had reason to know was not owed to a collection agency is a separate question.  However, the parties have not raised this issue and therefore it is not before the court.

statute of limitations had run.  In 1989, when the account was included in bankruptcy, the amount owed was $3,382.83.  G. Thomas Decl. in Supp. of Opp., Ex. 7.  However, the bank's letters to Mr. Thomas demanding payment stated he owed $3,402.58.  *Id.*, Ex. 5, 6.  This is a $19.75 difference in favor of the bank.  The bank's letters do not indicate it is seeking additional fees or interest, or otherwise explain the difference.

Based on these facts, I find the bank is entitled to summary judgment as to subsection (m).  The difference in amount, in and of itself, is not a sufficient basis from which to infer that the bank was "representing" to the Thomases that it could collect fees or charges beyond the amount owed on the debt.  From the evidence presented, there is simply no basis to conclude the bank was trying to influence the Thomases by telling them it could tack on fees to the amount owed on the debt.  *See Merriam-Webster's Collegiate Dictionary* 1057 (11th ed. 2005) ("representation" is a "statement or account made to influence opinion or action").

On the other hand, because the bank has not provided any explanation for the difference, one reasonable explanation is that the bank added a fee or other charge to the amount owed on the debt and sought to collect such.  Of course, this is not the only possible explanation.  But given that the facts and all reasonable inferences flowing therefrom are construed in favor of the non-movant at summary judgment, I find U.S. Bank has not established it is entitled to judgment as a matter of law as to subsection (n).  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  Thus, the bank's motion for summary judgment on the UDCPA claim is granted as to subsections (k) and (m) but denied as to subsection (n).

**II.)    The Thomases' Motion for Partial Summary Judgment**

The Thomases move for partial summary judgment on their (1) UTPA claim, (2) UDCPA subsection (k) claim, and (3) FCRA reasonable investigation claim.  This motion is denied.  As discussed above, the UTPA claim is preempted by the FCRA, and the Thomases have subsequently withdrawn this part of their motion.  Likewise, U.S. Bank is granted summary judgment on the UDCPA subsection (k) claim.  Finally, consistent with my prior analysis, I also

PAGE 20 - OPINION & ORDER

deny the Thomases' motion for summary judgment as to the reasonable investigation claim as there is a question of fact regarding whether the bank's investigation of the ACDVs it received in Fall 2004 was reasonable. Reasonableness is generally a jury question, and neither party has made a sufficient showing entitling it to judgment as a matter of law on this issue. *Westra*, 409 F.3d at 827; *Cope*, 2006 WL 655742, *4.

**III.)  Motion to Strike**

Finally, U.S. Bank moves to strike part of Mr. Thomas's declaration submitted in support of the Thomases' opposition to summary judgment. Mr. Thomas concedes the first challenged statement should be stricken. The second and third statements relate to the Thomases' argument that the bank's actions caused their lost opportunity to refinance with ING. As discussed above, there is no causal link between U.S. Bank's relevant conduct and ING's denial, and therefore these statements are stricken as irrelevant.

The bank challenges the next two statements arguing Mr. Thomas purports to interpret his credit reports without the necessary expertise. In paragraph five of his declaration, Mr. Thomas asserts "[b]oth the Equifax and TransUnion credit scores listed 'serious delinquency' as the primary derogatory factor." G. Thomas Decl. in Supp. Opp. to Def.'s Mot. Summ. J. at ¶ 5. Both of these reports speak for themselves, and whereas the bank apparently does not challenge the reports themselves, the record does not benefit from Mr. Thomas's explanation. In paragraph seven, Mr. Thomas states, "Attached hereto as Exhibit 2 is a true copy of an Equifax credit report showing USB and Capital Management (CMSI) as hard pull inquiries." *Id.* at ¶ 7. "Hard pull" is a term of art in the consumer reporting industry and Mr. Thomas is not qualified to address this issue.

Finally, the bank challenges Exhibit 4–an Equifax report dated November 19, 2004–for lack of foundation and hearsay. Likely there is no *real* dispute that this document is a business record; but, Mr. Thomas is not qualified under Fed. R. Evid. 803(6) to establish it as such, and therefore it is stricken as hearsay.

PAGE 21 - OPINION & ORDER

**CONCLUSION**

For the reasons discussed above, U.S. Bank's motion for summary judgment (#47) is GRANTED IN PART AND DENIED IN PART.  The motion is (1) granted as to the Thomases' reasonable investigation claim as relates to the Thomases' alleged financial damages, but otherwise denied as to that claim, (2) denied as to the improper purpose claim, (3) denied as the claim for punitive damages under the FCRA, and (4) granted as to the UTPA claim, and (4) granted as to the UDCPA subsections (k) and (m) claims but denied as to subsection (n).  The Thomas's motion for summary judgment (#45) is DENIED.  U.S. Bank's motion to strike (#83) is GRANTED.

IT IS SO ORDERED.


DATED this  _8th_  day of March, 2007.

                                        /s/ Michael W. Mosman
                                        MICHAEL W. MOSMAN
                                        United States District Court

PAGE 22 - OPINION & ORDER